## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                          |   |                         |
|--------------------------|---|-------------------------|
|                          | * |                         |
| **UNITED STATES**        | * |                         |
|                          | * |                         |
| **v.**                   | * | **Case No. 22-cr-00067-CJN** |
|                          | * |                         |
| **JOSHUA JOHN PORTLOCK**  | * |                         |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Joshua John Portlock, by and through his attorneys, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., submits this Memorandum in support of the arguments to be presented at the time of sentencing.

This Memorandum focuses on Mr. Portlock's personal history and characteristics, his prompt acceptance of responsibility, the support he enjoys from his loved ones, and the agreement of the parties. Mr. Portlock respectfully asks that this Court consider this information in fashioning a variant sentence below the applicable advisory guidelines range.

### I.    Introduction

On October 28, 2021, the United States charged Mr. Portlock in a seven-count Criminal Complaint with offenses related to the events at the Capitol on January 6, 2021. On November 3, 2021, Mr. Portlock was arrested in connection with the Criminal Complaint in the Middle District of Tennessee, and was released on his

own recognizance with pretrial supervision. He then appeared virtually before this Honorable Court on November 9, 2021 and was released on the same conditions.

On March 4, 2022, the United States charged Mr. Portlock by way of an eight-count Indictment. The United States charged Mr. Portlock in the Indictment with three counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) ("Counts One, Two, and Three"); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) ("Count Four"); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(1) ("Count Five"); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) ("Count Six"); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(4) ("Count Seven"); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) ("Count Eight").

On August 31, 2023, Mr. Portlock appeared before this Honorable Court and accepted responsibility for his conduct. Specifically, he pled guilty to Count Four, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). (Plea Agreement, ECF No. 45; Statement of Offense, ECF No. 46; Waiver of Trial by Jury, ECF No. 44.) Under the terms of the Plea Agreement, Mr. Portlock and the Government agreed to an estimated advisory guidelines range of 24 to 30 months of imprisonment. Mr. Portlock reserved the right to seek a sentence below

the estimated advisory guidelines range based upon the 18 U.S.C. § 3553(a) factors. In this case, a variant sentence below the advisory guidelines range is sufficient but not greater than necessary to achieve the goals of sentencing.

Sentencing is currently scheduled for April 17, 2024 at 12:30 p.m.

## II.      **Plea Agreement & Sentencing Guidelines Calculation**

Mr. Portlock agrees with the calculation of the combined adjusted offense level as reflected in both the Plea Agreement and the PSR. The combined adjusted offense level in this case is 20. (PSR ¶ 41.) As reflected in the Plea Agreement, and the PSR, Mr. Portlock submits that he has earned a three-level downward adjustment for acceptance of responsibility. Accordingly, the final adjusted offense level in this case is 17.

The parties agree that Mr. Portlock is assessed zero criminal history points and is therefore properly categorized in Criminal History Category I.

With a final adjusted offense level of 17 and a Criminal History Category I, the applicable advisory guidelines range in this case is 24-30 months of imprisonment. For the reasons set forth below, a variant sentence below the advisory guidelines range is the sufficient but not greater than necessary sentence in Mr. Portlock's case.

### III.    A Reasonable Sentence in this Case

The Supreme Court has said that the cornerstone of federal sentencing is that the sentencing judge "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)). After properly calculating the appropriate advisory guidelines range, this Court must consider all of the factors set forth at 18 U.S.C. § 3553(a) and undertake "an individualized assessment" of the case based on the facts presented.  *United States v. Akhigbe*, 642 F.3d 1078, 1084 (D.C. Cir. 2011) (citing *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). The overarching goal of federal sentencing is to impose a sentence that is "sufficient but not greater than necessary" to comply with the factors set forth in 18 U.S.C. § 3553(a). *United States v. Anderson*, 545 F.3d 1072, 1077 (D.C. Cir. 2008) (citing 18 U.S.C. § 3553(a)).

In the sentencing context, the United States Court of Appeals for the District of Columbia Circuit gives "due deference" to a district court's fact-specific determinations and application of the advisory guidelines to the facts of each case, "a standard which reflects the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them." *United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014) (citations omitted).

Here, when considering all the relevant factors, a variant sentence below the applicable advisory guidelines range represents a sufficient punishment for Mr. Portlock's conduct, without being greater than necessary.

## The Nature and Circumstances of the Offense

This Court is well aware of the nature and circumstances of the events at the Capitol on January 6, 2021. The Statement of Offense to which Mr. Portlock agreed sets forth the background and context of those events. In the aftermath of the 2020 presidential election, former President Donald Trump falsely claimed that the election had been stolen from him and urged his supporters to travel to the District of Columbia on January 6, 2021 – the day Congress was set to certify the results of the election.[1] Mr. Portlock traveled with his wife from his home state of Tennessee to Washington, D.C. to attend the "Stop the Steal" rally.

On the afternoon of January 6, after delivering a speech in which he repeated his false claims, former President Trump encouraged a crowd to march to the Capitol. The scene descended into utter chaos.

---

[1] *See, e.g.*, Indictment, *United States v. Trump*, No. 23-cr-257-TSC (D.D.C.), ECF No. 1 ¶ 87 ("On December 19, 2020, after cultivating widespread anger and resentment for weeks with his knowingly false claims of election fraud, [former President Trump] urged his supporters to travel to Washington on the day of the certification proceeding . . . Throughout late December, he repeatedly urged his supporters to come to Washington for January 6.").

Shortly before 2:28 p.m. on January 6, minutes after proceedings in both houses of Congress had suspended and then-Vice President Pence had evacuated the premises, Mr. Portlock joined a crowd that gathered between the Washington Monument and the Ellipse, and then proceeded to the U.S. Capitol.

Mr. Portlock attempted to breach police lines at both the western front of the U.S. Capitol and the Lower West Terrace tunnel. At approximately 2:30 p.m., Mr. Portlock grabbed and removed a metal barrier delineating the restricted area and separating a line of officers in the western plaza from the growing mob of rioters. Mr. Portlock also picked up a large piece of plywood and pushed it into and against a group of officers. After these actions, at approximately 3:00 p.m., Portlock entered and spent approximately 20 minutes in and around the Lower West Terrace tunnel. During his time, Mr. Portlock participated in "heave-ho" efforts against police officers, and helped pass stolen police riot shields to the front of the line on at least two occasions.

The nature and circumstances of the offenses at issue are indeed serious. For that reason, Mr. Portlock, who has a very limited prior criminal history and absolutely no history of assaultive conduct, has pled guilty to a serious felony offense before this Court. Mr. Portlock acknowledges that his conduct was unacceptable. However, there are certain mitigating factors to this conduct for the Court to consider. For example, Mr. Portlock did not use a weapon in the

commission of any assault on that day. In addition, as the Court is aware from presiding over many criminal cases arising from the events of January 6, the offenses took place in an environment of chaos caused by the thousands of people who were unlawfully present on the Capitol grounds. Again, these factors do not in any way provide justification for Mr. Portlock's conduct, but they do provide useful context when determining the appropriate punishment for a man in his 40s who has never before engaged in such conduct.

Mr. Portlock's Personal History & Characteristics

In 18 U.S.C. § 3553(a)(1), Congress has directed that district courts consider a criminal defendant's "history and characteristics" to determine whether a sentence is sufficient, but not greater than necessary to promote the purposes of sentencing. *United States v. Holmes*, No. CR 02-24, 2021 WL 1518336, at *9 (D.D.C. Apr. 16, 2021). The United States Court of Appeals for the District of Columbia Circuit has held that a "district court *must* take into account all relevant facts related to a defendant's 'history and characteristics.'" *United States v. Delaney*, 651 F.3d 15, 16 (D.C. Cir. 2011) (emphasis added) (citing 18 U.S.C. § 3553(a)(1)). When considered in the context of his decades of living a law-abiding life, Mr. Portlock's history and characteristics weigh heavily in favor of a sentence below the advisory guidelines range.

Aside from the events of January 6, Mr. Portlock has lived an exemplary life centered around work and family. Joshua's own childhood was not one to be remembered fondly. When Mr. Portlock was a child, his family moved frequently and his parents used corporal punishment as a means of disciplining their children. When asked, Josh would not label his upbringing as "abusive" but rather consistent with the times.

After finishing High School, Mr. Portlock joined the military, though his military career turned out to be short lived. Mr. Portlock joined the civilian workforce immediately thereafter and has remained consistently employed since. As a result of his involvement in the January 6 riot, his arrest thereafter, and the publicity this case garnered in his community, Mr. Portlock lost a lucrative career at Mitsubishi Motors. After a period of unemployment, Mr. Portlock has found new work, though his salary is much lower than it had been before his arrest.

Mr. Portlock met and married his wife Aimee not long after leaving the military.  The couple moved around initially, living in New York, Kansas and Dallas before settling in Franklin, Tennessee. The Portlocks chose to settle in Franklin because they had friends and family in the area and desired a sense of community in which to raise their family. There they raised three children – Alexis, Nathan, and Leila. All three have found success – Alexis graduated from Vanderbilt University and is now married; Nathan has found work that he enjoys; and Leila thrives in

school. Recently, the Portlock family has expanded, and Joshua has become a proud grandfather to Nathan's two young children.

This is the picture of a successful person with strong character, one who has consistently worked to provide for his family, has raised his children in a community surrounded by love and friendship, and who has, other than an incident while still a teenager, lived his life lawfully. Mr. Portlock has great regret for his actions on January 6. One can see from Mr. Portlock's life choices that he is not the type of person to engage in riotous behavior or assault police. He certainly did not come to the nation's capital that day with the expectation that he would break the law.

A sentence of 24 to 30 months of imprisonment is far greater than necessary to achieve the purposes of sentencing.

<u>Mr. Portlock's Acceptance of Responsibility</u>

Mr. Portlock was arrested in the Middle District of Tennessee on November 3, 2021. He made his initial appearance in this Court on November 9, 2021. On May 31, 2023, Mr. Portlock signed the Plea Agreement and Statement of Offense in which he admitted to his unlawful conduct.[2] On August 11, 2023, Mr. Portlock appeared before this Court and formally entered his plea of guilty. During Mr. Portlock's PSR interview, he again acknowledged that he accepted responsibility for

---

[2]     Mr. Portlock did not file any pretrial motions in this case. A trial date was never set.

his conduct as set forth in the Plea Agreement. The record clearly demonstrates Mr. Portlock's timely and fulsome acceptance of responsibility. Mr. Portlock never wished to put the Government to its proof at trial. He recognizes that his actions on January 6 were wrong. They represent an aberration from a lifetime of law-abiding conduct.

The Need to Avoid Unwarranted Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6), in sentencing Mr. Portlock, this Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In its sentencing memorandum, the government directs this Court to two other cases involving defendants from January 6 who were found guilty of assaultive conduct. The defense could likewise comb through the sentences imposed in other cases to find cases supporting a variant sentence. To the degree that the sentences in other cases are relevant to the Court's consideration of Mr. Portlock's case, the defense directs this Court to the PSR author's citation to the Judiciary Sentencing Information data which reveals the mean and median sentences in all cases whose primary guideline was § 2A2.2. Those cases in which defendants came before courts with a base offense level of 17 and a Criminal History in Category I resulted in average sentence of 20 months and a median sentence of 21 months among those cases resulting in a

sentence of incarceration, and an average sentence of 18 months and a median sentence of 21 months among all 60 cases.

A variant sentence below the advisory guidelines range would meet Congress' mandate that this Court consider the need to avoid unwarranted sentencing disparities.

<u>A Sentence Below the Advisory Guidelines Range Will Justly Punish Mr. Portlock and Promote Respect for the Law</u>

Mr. Portlock, a 42-year-old who has very little prior criminal history, has accepted responsibility and pled guilty to felony assault. A lengthy term of incarceration is not necessary to promote the goals of 18 U.S.C. § 3553(a). In terms of the need to protect the public, Mr. Portlock has no history of violent or assaultive behavior apart from his unlawful actions on January 6, 2021. Mr. Portlock recognizes that his actions were wrong, and he is being punished for them, but a lengthy term of incarceration is not needed to protect the public. Similarly, a lengthy sentence is not required to deter Mr. Portlock. For the first time in his life, Mr. Portlock faces the prospect of being incarcerated and removed from his family. This Court can be sure that Mr. Portlock will never again engage in conduct that would place him back in this position.

<u>Family and Community Support</u>

Several of Mr. Portlock's loved ones have contacted undersigned counsel to discuss Mr. Portlock's character, his strong sense of community, their appreciation of his friendship, and their commitment to support him and his family going forward. Mr. Portlock is grateful to have such a strong support network. These conversations have left counsel with undeniable impression that Mr. Portlock is a beloved member of his family and community. He is a devoted father, grandfather, and husband. Letters from those closest to Mr. Portlock are being sent to counsel and will be forwarded to the Court for its consideration.

IV.    **Conclusion**

In light of the factors discussed above, Mr. Portlock respectfully requests that this Court exercise leniency in its ultimate resolution of this matter and consider his personal history and characteristics, including his status as a father and grandfather; his fulsome acceptance of responsibility and remorse; and the support he enjoys from his loved ones. In Mr. Portlock's case, a sentence below the advisory guidelines range is sufficient, but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

s/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane
Suite 700
Greenbelt, Maryland  20770
301.474.0044

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 12, 2024, a copy of the foregoing was served on all parties via ECF.

s/_____
Michael E. Lawlor